COBB, Judge.
On September 13, 1994, the appellant, Ronnie Delee Bailey, was convicted of the murder of his wife, Sandra Bailey. He was sentenced to 25 years’ imprisonment on October 28, 1994. On this direct appeal the appellant makes three allegations, which, if correct, would amount to reversible error and would entitle him to a new trial. These allegations are as follows:
I. that the trial court erred in refusing to charge the jury, as requested, that it could consider the effects of alcohol on the accused in determining the accused’s intent at the time of the homicide;
II. that the trial court erred in refusing to charge the jury, as requested, on the lesser included offense of heat-of-passion manslaughter; and,
*64 III. that the trial court erred in allowing rebuttal testimony by a witness about a prior domestic difficulty, which was a collateral matter.
I
The appellant contends that the jury should have been instructed that it could consider the effects of intoxication, if any, in deciding whether he was guilty of murder. The appellant claims that because the issue of his level of intoxication was raised by one of the State’s witnesses, the jury could have properly considered that evidence in reaching a verdict. The witness who testified as to the appellant’s possible intoxication was the 11-year-old daughter of the deceased, when she stated that the appellant had been drinking that day (although she did not know how much), that she had smelled alcohol on his breath on that date, and that she was afraid for any of the neighbors to approach the appellant immediately after her mother’s shooting, which she witnessed. (R. 85-86.)
The appellant testified that he drank two beers around 6:30 p.m. on the evening of the murder, over three hours before the murder. (R. 145-46.) He specifically denied, during cross-examination, that he was intoxicated at the time of the argument leading up to the killing and the actual killing. (R. 168.) He further testified that alcohol had nothing to do with the shooting. (R. 168.)
This court has had occasion recently to discuss when a jury charge of intoxication should be given by the trial court:
“Judge Bowen, in Fletcher v. State, 621 So.2d 1010 (Ala.Crim.App.1993), addressed the question of when an instruction on intoxication should be given. Judge Bowen stated:
“ ‘A charge on intoxication should be given if “ ‘there is an evidentiary foundation in the record sufficient for the jury to entertain a reasonable doubt’ ” on the element of intent. Coon v. State, 494 So.2d 184, 187 (Ala.Crim.App.1986) (quoting Government of the Virgin Islands v. Carmona, 422 F.2d 95, 99 n. 6 (3d Cir.1970)). See also People v. Perry, 61 N.Y.2d 849, 473 N.Y.S.2d 966, 966-67, 462 N.E.2d 143, 143 (N.Y.App.1984) (“[a] charge on intoxication should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis”)_’ ”
Ashley v. State, 651 So.2d 1096 (Ala.Crim. App.1994). Based on the testimony in this case, there was no evidence presented that would raise a reasonable doubt as to the appellant’s state of intoxication at the time of the murder. Further, the court did instruct on the lesser included offenses of criminally negligent homicide and reckless manslaughter, neither of which crimes requires specific intent to kill.
Therefore, the trial court’s refusal to instruct the jury on the appellant’s intoxication was not error.
II
The appellant further contends that the trial court erred in not instructing the jury as to the possibility that he killed Mrs. Bailey in the heat of passion, which would permit the jury to return a verdict finding him guilty of manslaughter and not murder. This contention is without merit. Aside from evidence that an argument between the appellant and Mrs. Bailey took place immediately before the shooting, during which Mrs. Bailey asked the appellant to give her the keys to the apartment and to leave, and during which she threw his clothes into the hallway, no other evidence exists that would remotely indicate that the appellant was provoked by the heat of passion. Further, the appellant specifically denied being mad or even upset by his wife’s actions immediately before shooting her. (R. 188.)
As this court held in Fisher v. State, 587 So.2d 1027, 1032 (Ala.Crim.App.1991), cert. denied, 587 So.2d 1039 (1991), cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992), a trial court may properly refuse to charge, on a lesser included offense only when “(1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense or (2) the requested charge would have a tendency to mislead or confuse the jury.” (Citing Lami v. State, 43 Ala.App. *65 108, 180 So.2d 279, cert. denied, 278 Ala. 710, 180 So.2d 282 (1965). In Fisher, a similar fact scenario existed, i.e., the appellant shot his wife following a fight, and the court there held:
“Although there was evidence that the appellant and his wife had been arguing when the erime[] occurred, because the wife intended to end the relationship, emotional disturbance, no matter how extreme, is not sufficient to reduce murder to manslaughter. Gray v. State, 482 So.2d 1318 (Ala.Crim.App.1985). Moreover, this emotional disturbance does not constitute the type of legal provocation contemplated by the manslaughter statute. § 13A-6-3(a)(2); Biggs v. State, 441 So.2d 989 (Ala. Crim.App.1983)-”
587 So.2d at 1033 (Emphasis added.)
This court agrees with the trial court’s finding that the evidence does not reveal any acts that would rise to the level of provocation recognized by the law to support a heat-of-passion manslaughter charge. The trial court properly charged the jury as to criminally negligent homicide and as to reckless manslaughter as alternatives to the intentional murder charge given.
Ill
The appellant finally contends that the trial court committed reversible error by allowing the prosecutor to offer rebuttal testimony to refute the appellant’s direct testimony regarding a matter that he claimed was immaterial to the case. On direct examination, defense counsel asked the appellant, “Do you know — when was the last time you had this pistol in your possession prior to the shooting, physically in your possession?” The appellant answered, “Can’t really recall, sir.” (R. 154.)
The appellant related an incident on direct examination during which he claimed that this particular handgun had accidentally discharged a bullet into the console of his car. (R. 161.) He further claimed that the shooting during which his wife was killed was a similar accident. Mr. Bailey stated, “When I went and got the gun off the wicker stand I turned around and the gun said ‘pow’ and then she fell to the floor.” (R. 149.) He denied cocking the pistol, although he admitted having the magazine engaged and a round in the chamber immediately before the shooting. (R. 160.)
On cross-examination, the prosecutor questioned the appellant, as follows:
“Q: [BY THE PROSECUTOR:] When is the last time you fired this gun, Mr. Bailey?
“A: I can’t recall, sir.
“Q: Oh, you don’t remember? You don’t remember the last time you fired this gun before the bullet came out that killed your wife?
“A: No, sir.
“Q: You don’t remember driving in the ear two weeks before you shot your wife with this gun?
“A: No, sir.
“Q: You don’t remember shooting the gun up into the air four times outside the car?
“A: No, sir.
“Q: Saying, This is how much I love my wife?
“A: No, sir.
“Q: That didn’t happen?
“A: No, sir.”
(R. 178.) The appellant also denied ever having received safety instructions regarding the handling of handguns during his eight years in the United States Marines Corps. (R. 174-75.) He testified that he was not upset during the argument that immediately preceded the shooting, even when his wife threw his clothes into the hallway. (R. 188.) And finally, the appellant stated that he did not remain at the scene of the crime to explain to the police that the shooting was accidental. (R. 189.)
Once the appellant denied recalling the shooting incident in his car, the State presented a rebuttal witness, over the defense’s objection (R. 192-93), who described the incident. Beverly Ann Williams testified as an eyewitness to the prior incident. (R. 193.) She noted that two weeks before the murder of Mrs. Bailey, the appellant fired his handgun four times into the air while driving with *66 Mrs. Bailey and Ms. Williams. The appellant contends that the trial court erred in allowing the State to present rebuttal testimony to impeach the appellant regarding the matter of the last time that he fired the gun. The defense argues that Ms. Williams’s testimony pertained to a domestic problem between the Baileys that was not the subject of the case on trial and that was not material.
However, that sort of rebuttal testimony is admissible under certain circumstances. In Wright v. State, 279 Ala. 543, 188 So.2d 272 (1966), the Alabama Supreme Court allowed the same sort of testimony regarding a domestic disturbance that had occurred 11 days before the murder of the wife by her husband. A friend of the victim, Ms. Ponder, witnessed and related on the witness stand an incident wherein the defendant, Mr. Wright, had begun choking his wife. When Ms. Ponder tried to help Mrs. Wright, the defendant grabbed Ms. Ponder so hard that he fractured one of her ribs. The Wright court ruled that Ms. Ponder’s testimony regarding the defendant’s assault upon the victim was clearly admissible as showing “the animus and intent of the appellant at the time his wife was shot, and as to whether the shooting was an accident as the appellant claims.” Wright, at 278.
Further, the Wright court held that certain details must be divulged in order to offer the jury a complete picture of the prior incident. “The demarcation between the fact, or highlights, of a former difficulty, and its details, is indeed a tenuous and vague division. A measure of discretion should and must be allowed the trial judge in determining the extent of detailing necessary to picture and constitute the fact. Brothers v. State, 236 Ala. 448, 183 So. 433 (1938).” Wright, at 279. Accord, Tillman v. State, 52 Ala.App. 282, 291 So.2d 373 (1974) (citing Wright as authority for allowing rebuttal testimony regarding prior domestic difficulties). The Wright case closely parallels the facts of this case as to the disputed testimony and is the authority that governs this issue in the present case.
Generally speaking, it is impermissible to impeach a witness on a collateral matter. C. Gamble, McElroy’s Alabama Evidence, § 156.01(1) (4th ed. 1991). However, if the matter upon which the witness is being impeached is a material matter, then under Alabama law, impeachment is permitted.
“Evidence of collateral crimes and acts is also admissible to rebut material aspects of the testimony of certain witnesses, including the defendant ... When evidence is offered to contradict a witness’ testimony on a material issue, extrinsic evidence is admissible to prove the fact at issue.”
W. Schroeder, J. Hoffman, & R. Thig-pen, Alabama Evidence 4-4(d) at 128 (1987). (Emphasis added [in Few ].)
Few v. State, 518 So.2d 835, 838 (Ala.Crim. App.1987) (J. Bowen, concurring specially). In this case, the disputed portion of Ms. Williams’s testimony pertained to a particular incident that the trial court allowed for several reasons: 1) to generally outline the relationship between the Baileys; 2) to illustrate the animus and the intent of the appellant toward his wife; and 3) to contradict the appellant’s testimony that he did not remember having the gun recently, that he was unfamiliar with the safe operation of the gun, and that the gun accidentally fired on the evening in question. These matters are probative as to the appellant’s claim that the shooting was accidental. Because Ms. Williams’s testimony is offered not for the purpose of impeaching the witness’s credibility, but is in fact offered for other material means, this testimony is material and therefore admissible. See, Few, 518 So.2d at 838.
For the foregoing reasons, the appellant is not entitled to a new trial, because the evidence offered on rebuttal was allowed into the record for proper purposes: to show the appellant’s intent and his animus toward the victim and to rebut the appellant’s claim that the shooting was an accident.
This court affirms the trial court’s judgment.
AFFIRMED.
All the Judges concur.