336 A.2d 262
**COMMONWEALTH of Pennsylvania**
v.
**Donald BERRY, Appellant.**

Supreme Court of Pennsylvania.
Argued April 19, 1974.

Decided April 17, 1975.

234

Mitchell S. Lipschutz, Neil Jokelson, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., James T. Ranney, Asst. Dist. Atty., Deputy Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Donald Berry, was charged with the murder of Harry Beasley. A trial was had before a judge

and jury at the conclusion of which the appellant was found guilty of murder in the second degree. Post-trial motions were filed, argued, and, subsequently, denied. A sentence of from eight to twenty years imprisonment was imposed. This appeal followed.

The sole issue presented in the instant appeal concerns the propriety of the trial court's charge to the jury on the elements of voluntary manslaughter.

The pertinent facts relating to this issue are as follows:

Two neighbors, Veronica Berry and Harry Beasley, became embroiled in a quarrel. Veronica Berry spit in Harry Beasley's face and he in turn struck her, knocking her to the ground. Upon hearing his mother's scream, the appellant, Donald Berry, came immediately to the scene of altercation, and found his mother on the ground. She related to her son what had happened and described how she had been illused by Mr. Beasley. Five minutes later the appellant went to the Beasley home, gained entry by force and fatally wounded the deceased.

During the course of the trial judge's charge he stated: "Now in defining the law to you concerning voluntary manslaughter I have said it must be a sufficient or reasonable provocation. As I will instruct you as a matter of law, that a blow struck against a person who is near or dear to you by virtue of a relationship—and in this particular instance it is the relationship between a mother and a son, *that if the blow struck to the mother in the presence of the son was such that would be ordinarily reasonable and sufficient provocation, that that blow struck against his mother, though not struck against him, could be a sufficient provocation,* if you so found that blow to be a reasonable and sufficient provocation under the law. (Emphasis added).

The italicized portion of the charge suggested that the provocation must necessarily occur in the presence of the

accused before it could be considered legal and sufficient provocation. However, when read in context with the remainder of the charge we are in agreement with the trial court's observation that the implication was obscure at best and no objection was made by defense counsel at that time.

Pursuant to a request for further instruction by the jury during the course of their deliberation the following statement was made:

> "I charge you as a matter of law that the striking of a person in the presence of another who is dear or near to that person, and in this case the presence of the son of his mother, if you believe that to be so, that if you believe that the blows were of such sufficient intensity as to be reasonable provocation, I charge you under those conditions that that would satisfy the definition of voluntary manslaughter."

At this point, the records show that counsel for the defense specifically objected to the court's statement requiring the physical presence of the accused at the time of the assault upon the mother:

> "If Your Honor pleases, I respectfully ask Your Honor, in addition to the charges that you gave the jury a few minutes ago, to further instruct them that the attack that takes place on one who is dear or close to one *need not be in the actual physical presence of the first who feels—becomes enraged. I think the jury may find sufficient provocation because of the closeness of time and space, but the mere fact that they were six feet away, didn't actually occur in their presence, would be sufficient."* (Emphasis added).

Defense counsel's request was denied and the charge was allowed to remain as stated.

This objection raises a critical issue under the facts of the instant appeal since the defense had admitted that the appellant was not present when the actual assault took place.

In the seminal case of *Commonwealth v. Drum*, 58 Pa. 9, 14 (1868), Justice Agnew described the crime of voluntary manslaughter as follows:

"Voluntary manslaughter often so nearly approaches murder, it is necessary to distinguish it clearly. The difference is this: manslaughter is never attended by legal malice or depravity of heart—that condition or frame of mind before spoken of, exhibiting wickedness of disposition, recklessness of consequences or cruelty. Being sometimes a wilful act (as the term voluntary denotes) it is necessary that the circumstances should take away every evidence of cool depravity of heart or wanton cruelty. Therefore, to reduce an intentional blow, stroke or wounding, resulting in death, to voluntary manslaughter, there must be sufficient cause of provocation, and a state of rage or passion, without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting—if there be provocation without passion or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder." Id. at 17.

Not only must there be provocation, but provocation of such a nature as to be recognized by law as adequate for this purpose.

"What is sufficient provocation for this purpose has not been exactly defined, and is probably incapable of exact definition, for it must vary with the myriad shifting circumstances of men's temper and quarrels. It is a concession to the infirmity of human nature, not an excuse for undue or abnormal irascibility, and, therefore to be considered in view of all the circumstances."

*Commonwealth v. Paese*, 220 Pa. 371, 373, 69 A. 891, 892 (1908).

**238**

In *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972) this Court recognized that "the determination of whether a certain quantum of provocation is sufficient to support the defense of voluntary manslaughter is purely an objective standard." Id. at 389, 292 A.2d at 289.

Moreover, we stated:

"In making the objective determination as to what constitutes sufficient provocation reliance may be placed upon the cumulative impact of a series of related events. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was 'incapable of cool reflection.'" Id. at 389–390, 292 A.2d at 290 (Footnotes omitted).

■ While the words of an insulting and scandalous nature are not sufficient cause of provocation, *Commonwealth v. Drum, supra*, 58 Pa. at 17, words conveying information of a fact which constitutes adequate provocation when that fact is observed would constitute sufficient provocation. LaFave and Scott, Criminal Law 576–577 (1972); Perkins, Criminal Law 62 (1969). The threatened or immediate infliction of serious injury upon a parent, spouse or child because of the relationship of the parties and the expected concern of one for the well being of the other, has occasioned courts to hold this conduct may be sufficient provocation to reduce the killing to voluntary manslaughter. See *Commonwealth v. Paese, supra*, 220 Pa. at 375, 69 A. at 892.

■■ We are constrained to hold that the trial court misled the jury in suggesting that the provocation could not be found to be legally sufficient in absence of a finding that the son actually witnessed the assault upon the mother. The arrival of the son upon the scene within seconds of the culmination of the attack, finding his mother prostrate on the ground, and hearing from her

the series of events that led to this condition would be the type of circumstances that a jury could conclude might occasion a reasonable man to become so impassioned as to cloud his reason and render him incapable of cool reflection.

Judgment of sentence is reversed and a new trial awarded.