The appellant, James Allen Purser, was convicted of murder, a violation of § 13A-6-2, Code of Alabama 1975, and of attempted murder, a violation of §§ 13A-6-2 and 13A-4-2, Code of Alabama 1975. He was sentenced to two consecutive life sentences.
The appellant, Purser, was convicted for the murder of Mark Pollard and the attempted murder of the appellant's estranged wife, Karen Denise Purser. The state's evidence at trial tended to show that the two victims were parked in the parking lot of the Pine Bowl Bowling Alley in Fultondale, Alabama, early in the morning of September 28, 1989. They were engaged in conversation. The appellant's wife was seated in her Volkswagen automobile and Mark Pollard was standing at the window of the automobile when the appellant arrived. Pollard told Ms. Purser that he would tell the appellant what they were doing in the parking lot. Shortly after Pollard walked to the appellant's car, the appellant shot him twice in the head with a .22 caliber pistol. Upon seeing what had happened, Ms. Purser got out of her car and began to run. The appellant shot her three times in the neck and chest. She fell to the ground and the appellant sat on her and beat her with the pistol. When she stopped moving, the appellant went to a nearby police station where he said that he had killed two people.
Two issues are presented to this court. *Page 299 
 I
The appellant first contends that the trial court erred by refusing his requested jury charge on "attempted manslaughter." The appellant's defense was that the killing of Pollard and the attempted killing of the appellant's wife, Karen Purser, were both committed under "heat of passion." He further contends that because the trial judge instructed the jury on the lesser included offense of "heat of passion manslaughter" as to Pollard, the judge should have also instructed the jury on attempted manslaughter as to Purser, who although shot three times by the appellant, survived the incident.
Legal provocation must be shown in order to establish "heat of passion" manslaughter. This court stated, in Biggs v.State, 441 So.2d 989 (Ala.Cr.App. 1983):
 "Although it is firmly established in Alabama that if one party finds his or her spouse in the act of adultery, the subsequent killing of either the offending spouse or the paramour is deemed, as a matter of law, to be caused by sufficient provocation. Hooks v. State, 99 Ala. 166, 13 So. 767 (1893). . . .
 "To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary, reasonable man. Other than discovered adultery, courts have reached different conclusions as to what factual situations are embraced within this doctrine. See Commentary, § 13A-6-3, Code of Alabama 1975. See also Annot., 93 A.L.R.3d 920 (1979).
". . . .
 " 'Past adultery lacks the peculiarly immediate and intense offense to a spouse's sensitivities which has led courts to recognize present adultery as adequate provocation, and many courts have refused to recognize discovery of past adultery as sufficient provocation.' "
441 So.2d at 992, citing Commonwealth v. Bermudez,370 Mass. 438, 348 N.E.2d 802, 805 (1976). (Emphasis added.)
In this case, counsel for the appellant argues in brief that the appellant may have believed the two were romantically involved, and that the appellant encountered them together in the early morning hours on the morning the shooting occurred with no one else around. However, no other evidence supports the conclusion that the appellant and Karen Purser were romantically involved. The evidence at trial was that the appellant and both victims were together at a local night club earlier in the evening (September 27), and that the appellant and Pollard had played pool together at the club. There was no testimony that the appellant believed the two had an adulterous relationship. When Purser arrived at the Pine Bowl parking lot, Pollard was standing outside the car in which Ms. Purser was seated and the two were talking through the window. Was this finding his spouse "in the act of adultery?" It was not.
The circuit court instructed the jury as to "heat of passion" manslaughter regarding the victim Pollard. The jury rejected that theory as to Pollard and instead found the appellant guilty of the murder.
There is no offense of attempted manslaughter in the State of Alabama. Judge Tyson, writing for this court in Stennet v.State, 564 So.2d 95 (Ala.Cr.App. 1990), held:
 "The trial judge erroneously instructed the jury on the offense of attempted manslaughter, since we find that attempted manslaughter is not an offense in this state."
The circuit court did not err in refusing the instruction as to attempted manslaughter.
 II
The appellant next contends that the trial court erred in overruling his objection to a portion of the prosecutor's opening statement. The complained of remarks were as follows:
 "[PROSECUTOR]: It all hinges on Karen Purser. She's the only one out there at the Pine Bowl when it all happens, and she can tell you what happened. Well, *Page 300 
excuse me. She's not the only one, other than Mark Pollard, who is no longer with us, and Allen Purser, who is on trial for killing Mark Pollard and trying to kill Karen.
"[DEFENSE COUNSEL]: I object, Your Honor.
"THE COURT: Overruled."
Section 12-21-220, Code of Alabama 1975, addresses the right of an accused to testify and prohibits the prosecution from commenting on his failure to testify at trial. That section provides as follows:
 "On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment."
This court stated in Collins v. State, 385 So.2d 993
(Ala.Cr.App. 1979):
 "It does not matter that during the opening statement that accused has or has not taken the stand, his constitutional right to remain silent may still be violated. The argument that no harm can be ascertained from remarks indifferent to that right until closing arguments, after the accused has elected not to testify is ill conceived and ill thought out. Certainly, we would be remiss in our duty if we failed to recognize the danger of the district attorney, early in the proceedings, directly or indirectly focusing the jury's attention on what the accused will or will not testify to, or on what he previously has or has not admitted. In many instances, if this tactic were allowed, the prejudice to the accused would be even greater than if the comment were made after all the testimony had been taken. If permitted, the jury would be on their constant guard, anticipating the accused's 'chance to tell his story.' This form of prejudice to an accused's right to receive a fair trial will not be sanctioned or tolerated by this court. An accused's right to remain silent is inviolable at every stage in the proceedings and must be afforded due protection."
385 So.2d at 1001.
It is the duty of the prosecutor not to comment in any manner on the defendant's failure to testify. Further, he must strictly observe this duty at every stage of the proceedings.Canada v. State, 22 Ala. App. 495, 117 So. 398 (1928). We held in Collins, id., at 1001 (citing Johnsonv. State, 353 So.2d 62 (Ala.Cr.App. 1977)) that " 'such remarks by a district attorney during opening statement is error.' " In this case, however, we will not reverse.
Here, defense counsel made a general objection, which was overruled. In Hughes v. State, 412 So.2d 296
(Ala.Cr.App. 1982), we held that "[a] general objection which does not specify grounds presents nothing for review." 412 So.2d at 298. See also Watkins v. State,565 So.2d 1227 (Ala.Cr.App. 1990), Winton v. State, 563 So.2d 22
(Ala.Cr.App. 1990), Harris v. State, 563 So.2d 9
(Ala.Cr.App. 1989), Steele v. State, 389 So.2d 591
(Ala.Cr.App. 1980). Further, the trial court offered a curative instruction which the defense counsel refused as a matter of strategy. In Collins, this court held that:
 "[T]he trial court in considering the objection did offer to give curative instructions. Had this offer not been made, reversible error clearly would have occurred. However, appellant refused this offer on the theory it would 'further spotlight the error.' The trial court deferred to this request. While it was not incumbent upon appellant to choose whether curative instructions were to be given, that duty resting squarely upon the trial judge, a duty which he should not shirk, since he was given that choice and chose to refuse any corrective instructions, appellant may be said to have waived his original objection. '[A defendant] cannot by his own voluntary conduct invite error and then seek to profit thereby.' Aldridge v. State, 278 Ala. 470, 179 So.2d 51."
385 So.2d at 1002.
Thus, in this case we believe that the general objection did not preserve this issue *Page 301 
for review. Of course, a general objection will suffice at times to preserve error. Judge Bowen, writing for this court inLawrence v. State, 409 So.2d 987 (Ala.Cr.App. 1982), held:
 "Specific objections or motions are generally necessary before the ruling of the trial judge is subject to review, unless the ground is so obvious that the trial court's failure to act constitutes prejudicial error. Ward v. State, 376 So.2d 1112 (Ala.Cr.App. 1979), cert. denied, Ex parte Ward, 376 So.2d 1117 (Ala. 1979); Slinker v. State, 344 So.2d 1264
(Ala.Cr.App. 1977)."
409 So.2d at 989. (Emphasis added.) The comments of the prosecutor in this case that should have been the basis of the objection rise dangerously close to that level.
Under other circumstances we would not hesitate to reverse for improper comments of this type by the prosecutor. In this case, however, because the objection was general and not specific, and because the curative instruction was refused, we affirm the judgment of the trial court.
AFFIRMED.
All the Judges concur.